UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| EDWARD L. MERAS, | ) | 1:07-CV-00400 JMD HC |
| | ) | |
| Petitioner, | ) | ORDER DENYING PETITION FOR WRIT |
| | ) | OF HABEAS CORPUS |
| v. | ) | |
| | ) | ORDER DIRECTING CLERK OF COURT |
| D. K. SISTO, | ) | TO ENTER JUDGMENT |
| | ) | |
| Respondents. | ) | ORDER DECLINING ISSUANCE OF |
| | ) | CERTIFICATE OF APPEALABILITY |

Petitioner Edward Meras ("Petitioner") is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation at California State Prison Solano located in Vacaville, pursuant to a judgement of the Stanislaus County Superior Court. (Pet. at 2). Petitioner was convicted by a jury in July 2003 of robbery (Cal. Penal Code § 212.5), residential burglary (Cal. Penal Code § 459), and assault with a deadly weapon (Cal. Penal Code § 245(a)(1)). (Answer at 1-2). The trial court further found sentencing enhancements for inflicting great bodily injury (Cal. Penal Code § 12022.7) and for the use of a deadly or dangerous weapon (Cal. Penal Code § 12022(b)). (Answer Ex. H at 2-3). The trial court imposed an aggregate sentence of fourteen years, composed of a nine year upper term for first degree robbery, three years for the injury enhancement, one year for the weapon use enhancement, and a consecutive sentence of one year for assault with a deadly weapon. (Id).

Petitioner appealed his conviction to the California Court of Appeal. The state appellate court affirmed Petitioner's conviction in a reasoned opinion issued on July 5, 2005. (*See* Answer Ex. H).

Petitioner subsequently filed a petition for review to the California Supreme Court. The California Supreme Court summarily denied the petition on September 27, 2006. (Answer Ex. L).

On February 26, 2007, Petitioner filed the instant federal petition for writ of habeas corpus in the Eastern District of California, Sacramento. The petition was transferred intradistrict to this court on March 13, 2007. The petition sets forth three grounds for relief: (1) ineffective assistance of counsel; (2) deprivation of Petitioner's constitutional right to confront witnesses against him; and (3) violation of his right to a jury trial pursuant to *Blakely v. Washington*, 542 U.S. 296 (2004).

On August 16, 2007, Respondent filed an answer to the petition. Petitioner submitted a reply to Respondent's answer on September 7, 2007.

<u>Consent to Magistrate Judge Jurisdiction</u>

On March 6, 2007, Petitioner consented, pursuant to Title 18 U.S.C. § 636(c)(1), to have a magistrate judge conduct all further proceedings, including entry of the final judgment. (Doc. # 5). Petitioner again consented, after the case had been transferred to this court, on March 22, 2007. (Doc. #10). On August 15, 2007, Respondent also consented to the jurisdiction of a magistrate judge. (Doc. #16).

A consent order reassigning the case for all purposes to a magistrate judge was issued on August 30, 2007. (Doc. #19). On January 28, 2009, the case was reassigned to the undersigned.

**FACTUAL BACKGROUND**[1]

> Defendant and two other men broke into the victim's house and entered his bedroom late one night. Defendant attacked the victim with a knife, stabbing him in the chest and stomach and cutting his hand. The victim asked why he was being attacked. Defendant said the victim had failed to pay a debt to a third party, and defendant was there to collect. After warning the victim that they would return and kill him if he called the police, defendant and his accomplices stole some money and other property from the house and left.

(Answer Ex. H at 2)

---

[1] The facts are derived from the factual history set forth by the California Court of Appeal, Fifth District, in its unpublished opinion issued on June 5, 2005, and are presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1).

**DISCUSSION**

**I.       Jurisdiction and Venue**

A person in custody pursuant to the judgment of a state court may petition a district court for relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution and Petitioner's custody arose from a conviction in the Fresno County Superior Court. Fresno County is within this judicial district. 28 U.S.C. § 84(b). As an application for writ of habeas corpus may be filed in either the district court where Petitioner is currently incarcerated or in the district where Petitioner was sentenced, the Court has jurisdiction over and is the proper venue for this action. *See* 28 U.S.C. § 2241(d).

**II.      ADEPA Standard of Review**

In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's enactment. Lindh v. Murphy, 521 U.S. 320, 326-327 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied*, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh, 521 U.S. 320 (holding AEDPA only applicable to cases filed after statute's enactment)). The instant petition was filed in February 2007 and is consequently governed by the provisions of AEDPA, which became effective upon its enactment on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003).

Title 28 U.S.C. section 2254 remains the exclusive vehicle for Petitioner's habeas petition. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir. 2006) (quoting White v. Lambert, 370 F.3d 1002, 1006 (9th Cir. 2004) in holding that § 2254 is the exclusive vehicle for a habeas petitioner in custody pursuant to a state court judgment even where the petitioner is not challenging his underlying state court conviction). Under AEDPA, a petition for habeas corpus "may be granted only if he demonstrates that the state court decision denying relief was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States.'" Irons v. Carey, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1)); *see* Lockyer, 538 U.S. at 70-71.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id. (quoting Williams, 592 U.S. at 412). "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; *see also* Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner bears the burden of establishing that the state court's decision is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. *See* Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003); Duhaime v.

Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*, 537 U.S. 859 (2002).

**III.     Review of Petitioner's Claim**

Petitioner raises three grounds for relief: (1) ineffective assistance of counsel; (2) deprivation of his constitutional right to confront a witness against him; and (3) a violation of his right to a jury trial pursuant to *Blakely*.

*A.     Ineffective Assistance of Counsel*

Petitioner contends that trial counsel provided ineffective assistance by failing to challenge the victim's in court identification of Petitioner at trial. Petitioner specifically alleges that the in court identification was tainted by the previous identification at the preliminary hearing. (Pet. Mem. P. & A. at 1). The state appellate court held that Petitioner had not established ineffective assistance as Petitioner had not shown a substantial likelihood of irreparable misidentification. The Court of Appeal's opinion was the only reasoned opinion in this case as the California Supreme Court summarily denied the claim. When reviewing a state court's summary denial, the Court "look[s] through" the summary disposition to the last reasoned decision. *See* Shackleford v. Hubbard, 234 F.3d 1072, 1079 n. 2 (9th Cir. 2000) (citing Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991)). Thus, the California Supreme Court is presumed to have adjudicated this claim for the same reasons cited by the California Court of Appeal in their reasoned denial of Petitioner's claim. *See* Ylst v. Nunnemaker, 501 U.S. at 803.

Generally, ineffective assistance of counsel claims are analyzed under the "unreasonable application" prong of 28 U.S.C. § 2254(d). Weighall v. Middle, 215 F.3d 1058, 1061-1062 (9th Cir. 2000). For the purposes of habeas cases governed by 28 U.S.C. § 2254 (d), the law governing ineffective assistance of counsel claims is clearly established. Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998). An allegation of ineffective assistance of counsel requires that the petitioner establish two elements–(1) counsel's performance was deficient and (2) petitioner was prejudiced by

1  the deficiency. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); United
2  States v. Olson, 925 F.2d 1170, 1173 (9th Cir. 1991); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir.
3  1994). Under the first element, Petitioner must establish that counsel's representation fell below an
4  objective standard of reasonableness, specifically identifying alleged acts or omissions which did not
5  fall within reasonable professional judgment considering the circumstances. Strickland, 466 U.S. at
6  688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995). Judicial scrutiny of
7  counsel's performance is highly deferential and there exists a strong presumption that counsel's
8  conduct fell within the wide range of reasonable professional assistance. Strickland, 466 U.S. at
9  687; Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994).

10  Secondly, Petitioner must show that counsel's errors were so egregious that Petitioner was
11  deprived of the right to a fair trial, namely a trial whose result is reliable. Strickland, 466 U.S. at
12  687. To prevail on the second element, Petitioner bears the burden of establishing that there exists
13  "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding
14  would have been different. A reasonable probability is a probability sufficient to undermine
15  confidence in the outcome." Quintero-Barraza, 78 F.3d at 1348 (quoting Strickland, 466 U.S. at
16  694). A court need not determine whether counsel's performance was deficient before examining
17  the prejudice suffered by the Petitioner as a result of the alleged deficiencies. Strickland, 466 U.S. at
18  697. Since prejudice is a prerequisite to a successful claim of ineffective assistance of counsel, any
19  deficiency that was not sufficiently prejudicial to Petitioner's case is fatal to an ineffective assistance
20  of counsel claim.

21  In order for Petitioner to establish prejudice, Petitioner must show that there exists a
22  reasonable probability that trial counsel's objection to the victim's identification would have resulted
23  in the exclusion of this evidence. Consequently, Petitioner must establish that it is reasonably
24  probable he would have prevailed on a claim of suggestive misidentification. "Suggestive
25  confrontations are disapproved because they increase the likelihood of misidentification, and
26  unnecessarily suggestive ones are condemned for the further reason that the increased chance of
27  misidentification is gratuitous." Neil v. Biggers, 409 U.S. 188, 198, 93 S.Ct. 375 (1972). A
28  confrontation which is "so unnecessarily suggestive and conductive to irreparable mistaken

identification," can deny a criminal defendant due process of the law. <u>Stovall v. Deno</u>, 388 U.S. 293, 301-302, 87 S.Ct. 1967 (1967). In determining whether an identification procedure comports with the requirements of due process, the inquiry before the court is "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." <u>Id</u>. at 199; *see also* <u>United States v. Drake</u>, 543 F.3d 1080, 1088 (9th Cir. 2008). The Supreme Court has specifically enumerated five factors to be considered in assessing the reliability of identification testimony, stating that:

> These include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.

<u>Manson v. Brathwaite,</u> 432 U.S. 98, 114, 97 S.Ct. 2243 (1977) (citing <u>Neil</u>, 409 U.S.. at 199-200); *see* <u>United States v. Jones</u>, 84 F.3d 1206, 1209-1210 (9th Cir. 1996); *see also* <u>United States v. Valenzuela</u>, 722 F.2d 1431, 1433 (9th Cir. 1983).

In Petitioner's case, the appellate court correctly identified the correct standards by which to adjudicate both Petitioner's ineffective assistance of counsel claim and for the substantive claim itself. The appellate court examined the five factors in considering whether the victim's identification in this case was reliable prior to concluding that the factors would have weighed in favor of admitting the identification. The Court of Appeal noted that:

> The victim and attacker were face to face on the victim's bed as the attacker stabbed the victim. Although the attacker was wearing sunglasses, the victim said that he was able to see the attacker's eyes. The victim was paying enough attention to what was going on during the attack to have a conversation with the attacker-even while he was being stabbed-about the reason for the attack. The victim's description of defendant was accurate except with respect to the moustache. The victim expressed no hesitation or doubt on any of the three occasions when he identified defendant. The preliminary hearing identification took place on June 15, 2000, one and one-half months after the crime on April 30, 2000. Balancing the factors, we conclude that "the identification was reliable even though the confrontation procedure was suggestive," and therefore there was no constitutional violation.

(Answer Ex. H at ). Petitioner does not dispute that three of the factors indicated that the identification was reliable. Petitioner admits the victim had a substantial opportunity to view his assailant, the victim's individual attention was focused on the assailant, and the length of time was shorter than the duration between the crime and confrontation approved of in *Neil v. Biggers*. (Pet.

Mem. P. & A. at 11).  The Court's review of the record also shows that the balance of these factors weigh in favor of finding that the circumstances of the identification was reliable.  Specifically, the level of certainty demonstrated by the witness at the in court confrontation supports a finding of reliability.  While Petitioner contends that the witness' level of certainty favors a finding of unreliability, the witness clearly identified Petitioner as his assailant (RT at 87) and testified that there was no doubt in his mind as to this identification (RT at 100) during the court proceedings.  The only factor which could have supported Petitioner's contention that the circumstances were unreliable is the accuracy of the witness' description of his assailant prior to the in court identification.  As noted by the appellate court, Petitioner's bald head and moustache went unmentioned in the victim's initial description of his assailant. (Answer Ex. H at 6).  However, this omission does not weigh so heavily against the other four factors as to support a finding that the circumstances were unreliable.  Thus, the state court's determinations, that the victim's identification would not have been excluded on this basis and that Petitioner was not prejudiced by counsel's failure to object, were not objectively unreasonable.

       *B.*       *Confrontation Clause*

At trial, the prosecution admitted into evidence a pair of blood stained blue jeans, discovered in a laundry hamper in Petitioner's house. (Answer Ex. H at 3).  The California Department of Justice performed the DNA testing on the jeans and compared it with a sample of the victim's blood.  (Id).  At trial, a laboratory supervisor testified that a laboratory technician conducted the test and comparison, finding that the blood on the jeans matched the victim's.  Petitioner contends that the supervisor's testimony violates his constitutional right to confront witnesses against him.

As the California Supreme Court summarily denied the petition, this Court looks through to the Fifth District Court of Appeal's last reasoned decision.  Ylst v. Nunnemaker, 501 U.S. at 804-05 & n. 3.  The appellate court found that the admission of the supervisor's testimony did not violate Petitioner's rights under the Confrontation Clause.  The appellate court concluded that the report was non testimonial as it fell within the business records exception to the hearsay rule set forth in California Evidence Code § 1271.  The decision by the California Court of Appeal on this issue cannot be deemed to have been contrary to or an unreasonable application of clearly established

Federal law.

The Confrontation Clause protects a defendant from unreliable hearsay evidence being presented against him during trial. *See* U.S. Constitution, Amendment VI. The Confrontation Clause of the Sixth Amendment specifically provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." Id. The Sixth Amendment's Confrontation Clause was made applicable to the states through the Due Process Clause of the Fourteenth Amendment. Pointer v. Texas, 380 U.S. 400, 403-05 (1965). In *Crawford v. Washington*, 541 U.S. 36, 59 (2004), the United States Supreme Court held that the Confrontation Clause bars the state from introducing out-of-court statements which are testimonial in nature, unless "the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine."[2] The *Crawford* court categorically rejected as hearsay exceptions statements, which were otherwise deemed to be reliable, reasoning that, "dispensing with confrontation because testimony is obviously reliable is akin to dispensing with a jury because a defendant is obviously guilty. This is not what the Sixth Amendment proscribes." Id. at 62. However, the Supreme Court in *Crawford* specifically singled out business records as an example of non-testimonial hearsay. Id. at 56; *see also* United States v. Miller, 830 F.2d 1073, 1077 (9th Cir. 1987).

The Court's research has not revealed any binding authority on whether a DNA test constitutes a business record within the context of the Confrontation Clause, though it has yielded several persuasive authority that would support such a conclusion. The Seventh Circuit in *United States v. Ellis* 460 F.3d 920, 926-927 (7th Cir. 2006) found that the admission of a certified copy of blood and urine tests did not violate a criminal defendant's right to confront witnesses against him as the tests constituted business record. The *Ellis* court concluded that blood and urine tests qualify as business records, noting that the medical professionals "were employees simply recording observations which, because they were made in the ordinary course of business, are 'statements that by their nature were not testimonial.'" Id. at 927 (citing Crawford, 541 U.S. at 56). The Second

---

[2]Even if the DNA report, and the supervisor's testimony, were testimonial hearsay, the Court notes that Petitioner's case may fall within the other exception to the Confrontation Clause as Petitioner did cross examine the DNA technician at the first trial and the technician was found to be unavailable by the trial judge.

Circuit likewise found that an autopsy report qualified as a business record, rejecting a defendant's argument that the report was testimonial as it was prepared with the reasonable expectation that it was to be used at a subsequent trial. United States v. Feliz, 467 F.3d 227, 234-235 (2d Cir. 2006). The California Supreme Court decision in *People v. Geier*, 41 Cal.4th 555 (Cal. 2007) is also persuasive and pertinent to the facts of this case. In *Geier*, a laboratory supervisor testified as to the DNA test and results prepared by a technician. The *Geier* court examined the issue of whether scientific evidence, such as DNA testing, could constitute non testimonial hearsay in the form of a business record. Looking to *Feliz* and *Ellis*, the *Geier* court noted that statements from scientific reports, such as chemical analysis, autopsy reports, and notes of DNA laboratory technicians, were found to be business records within the definition of Rule 803(6) of the Federal Rules of Evidence. Id. at 606. Ultimately the *Geier* court concluded that statements pertaining to the DNA test were non testimonial hearsay, finding that the technician's "observations, however, constitutes a contemporaneous recordation of observable events rather than the documentation of past events." Id. at 605. As recognized by the *Geier* court, though, several other courts have reached the opposite conclusion on this question of whether scientific evidence, such as a DNA test, constitutes non testimonial hearsay. Id. at 598-599.

Considering this division, the Court cannot say that the state court's finding, that the DNA report was a business record and constituted non testimonial hearsay, was an unreasonable application of clearly established Federal law. See Bailey v. Newland, 263 F.3d 1022, 1032 (9th Cir. 2001)(holding that in light of differences among the various courts on the issue, a state court of appeals' conclusion on that issue was not an unreasonable application).

### C.     *Blakeley Violation*

Petitioner challenges the trial court's imposition of an upper term for the robbery conviction and a consecutive sentence for the robbery and assault with a deadly weapon. Petitioner alleges that the trial court's actions violates his right to a jury trial as the imposition of these terms were based on facts not found by a jury. Respondent contends that Petitioner has failed to exhaust his state court remedies.

### 1. Exhaustion of State Remedies

In briefs submitted to this Court, Respondent alleges that Petitioner has failed to exhaust his third ground for relief. Respondent does not dispute that this claim was raised to the state court but alleges that the issuance of *Cunningham v. California*, 549 U.S. 270, 127 S.Ct. 856 (2007), has "so significantly changed the legal analysis underlying this claim that petitioner's previous presentation of the claim in state court did not exhaust the claim." (Answer at 3, 15-23).

The exhaustion requirement mandates that petitioners fairly present the federal claims raised in their federal habeas petitioner before the state courts, including a state supreme court with powers of discretionary review, in order to afford the state courts the "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Picard v. Connor, 404 U.S. 270, 275 (1971); *see* Duncan v. Henry, 513 U.S. 364, 365-66 (1995); *see also* Baldwin v. Reese, 541 U.S. 27, 29 (2004). " 'Fair presentation requires that a state's highest court has a 'fair opportunity to consider...and to correct [the] asserted constitutional defect." Wooten v. Kirkland, 540 F.3d 1019, 1025 (9th Cir. 2008) (quoting Lounsbury v. Thompson, 374 F.3d 785, 787 (9th Cir. 2004) (quoting Picard, 404 U.S. at 276)). If an intervening change in federal law casts a previously exhausted claim in a fundamentally different light, the claim may be rendered unexhausted. *See* Picard, 404 U.S. at 276 (noting that it is an open issue whether an intervening change in federal law can render a previously exhausted claim unexhausted).

However, as noted by the Ninth Circuit in *Butler v. Curry*, 528 F.3d 624, 633 (9th Cir. 2008), this distinction has been replaced by the inquiry of whether this decision is a new procedural rule that cannot be applied retroactively on collateral review. Butler, 528 F.3d at 639. The Ninth Circuit further found that *Cunningham* decision was not a new rule that would be barred from retroactive application by *Teague v. Lane*, 489 U.S. 288, 310 (1989).[3] Id. Instead, the *Cunningham* decision is the application of a previously decided rule, i.e. *Blakely*, to California's determinate sentencing guidelines. Id. at 636. As it does not constitute a new rule of federal law that, Petitioner did fairly

---

[3] In *Teague v. Lane*, 489 U.S. 288 (1989), the Supreme Court held that a new rule of constitutional law cannot be applied retroactively on federal collateral review to upset a state conviction or sentence unless the new rule forbids criminal punishment of primary, individual conduct or is a "watershed" rule of criminal procedure. Caspari v. Bohlen, 510 U.S. 383, 396 (1994).

present his constitutional claim to the state court and has exhausted his state remedies.

## 2.     Imposition of the Upper Term

Petitioner contends that the trial court's imposition of the upper term of nine years for Petitioner's conviction for robbery is a violation of his constitutional right to a jury trial. The trial court's imposition of the upper term was based on the court's finding of factors in aggravation, including: (1) the manner in which the crime was committed demonstrated planning, sophistication, or professionalism pursuant to California Penal Code § 421(a)(8); (2) Petitioner's prior commitment to the California Youth Authority; (3) the crime involved great violence, disclosing a high degree of cruelty, viciousness, and callousness; and (4) the victim was particularly vulnerable as he was attacked in his home. (RT at 463-464). Petitioner raised this claim before the California Court of Appeal, which relied exclusively on *People v. Black*, 35 Cal.4th 1238 (2005), to reject Petitioner's claim. In *Black*, the California Supreme Court held that California's Determinative Sentencing Law satisfied federal constitutional law, stating that:

> *Blakely* and *Booker*[*v. Washington*, 543 U.S. 220, 125 S.Ct. 738 (2005)] established a constitutionally significant distinction between a sentencing scheme that permits judges to engage in the type of judicial fact finding typically and traditionally involved in the exercise of judicial discretion employed in selecting a sentence from within the range prescribed for an offense, and a sentencing scheme that assigns to judges the type of fact-finding role traditionally exercised by juries in determining the existence or nonexistence of elements of an offense.

Black, 35 Cal.4th at 1253. The *Black* court went on to find that "in operation and effect, the provisions of the California determinate sentence law simply authorize a sentencing court to engage in the type of fact-finding that traditionally has been incident to the judge's selection of an appropriate sentence within a statutorily prescribed sentencing range." Id. at 1254. The *Black* court held that the "presumptive" midterm does nothing more than establish a "reasonableness" constraint on an otherwise wholly discretionary sentencing choice akin to that which the United States Supreme Court has deemed constitutional. Id. at 1261.

*Blakely*, *Booker*, and *Cunningham* are the progeny of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348 (2000), in which the Supreme Court overturned a sentencing scheme that allowed a state judge to enhance a defendant's penalty beyond the prescribed statutory maximum upon finding, by a preponderance of the evidence, that the defendant "acted with a purpose to intimidate an

individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation, or ethnicity." Apprendi, 530 U.S. at 469.  The Supreme Court reversed, holding that "any fact that increases the penalty for a crime *beyond the prescribed statutory maximum* must be submitted to jury, and proved beyond a reasonable doubt." Id. at 490 (emphasis added).  In *Blakely*, the Court explained that the "statutory maximum" for *Apprendi* purposes is the "maximum" sentence a judge may impose solely on the basis of facts reflected in the jury verdict or admitted by the defendant.  In other words, the relevant "statutory maximum " is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional facts." Id. at 303-304.  In *Booker*, the Supreme Court applied the reasoning of *Blakely* to the federal sentencing guidelines, construing the guidelines to be discretionary.  Booker, 125 S.Ct. at 757.

In both *Apprendi* and *Blakely,* state law established an ordinary sentencing range for the crime the defendant was convicted of committing, but permitted the court to impose a sentence in excess of that range if it determined the existence of specified facts not intrinsic to the crime.  In each case the Supreme Court held that a sentence in excess of the ordinary range was unconstitutional because it was based on facts that were not admitted by defendant or found true by the jury beyond a reasonable doubt.  Consequently, the United States Supreme Court in *Cunningham v. California*, 549 U.S. 270, 127 S.Ct. 856 (2007), overruled the California Supreme Court's holding in *Black*, holding that the middle term in California's determinate sentencing law was the relevant statutory maximum for the purpose of applying *Blakely* and *Apprendi*. Id. at 868.  Specifically, the Court held that imposing the upper sentence violated the defendant's Sixth and Fourteenth Amendment right to a jury trial because it "assigns to the trial judge, not the jury, authority to find facts that expose a defendant to an elevated 'upper term' sentence." Id. at 860.

In light of the Supreme Court's decision in *Cunningham* and the Ninth Circuit's finding that *Cunninham* applies retroactively on collateral review, the state court's reliance on *Black* is an unreasonable application of clearly established Federal law.  However, such a finding does not automatically entitle Petitioner to relief.  Instead, the "power to grant the writ of habeas corpus to a state inmate depends on his actually being 'in custody in violation of the Constitution or laws . . . of the United States.'" Butler, 528 F.3d  at 641 (citing 28 U.S.C. § 2241(c)(3).)  To this end, the Court

1  must apply a de novo standard of review to determine whether a constitutional violation has
2  occurred.  *See* id.

3      Thus, the inquiry now facing the court is whether the error in Petitioner's sentencing was
4  harmless.  *See* Washington v. Recuenco, 548 U.S. 212 (2006) (sentencing errors are subject to
5  harmless error analysis).  In *Brecht v. Abrahamson*, 507 U.S. 619, 113 S.Ct. 1710 (1993), the United
6  States Supreme Court substantially restricted state prisoners' access to federal habeas relief by
7  requiring a showing that the violation of a federally guaranteed right had a "substantial and injurious
8  effect or influence in determining the jury's verdict."  Brecht v. Abrahamson, 507 U.S. 619, 623, 113
9  S.Ct. 1710, 1714 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253
10 (1946)).  In order for an error to have a "substantial and injurious effect or influence," it must have
11 "affected the verdict."  O'Neal v. McAnnich, 513 U.S. 432, 115 S.Ct. 992 (1995).  More specifically,
12 "[u]nder that standard, we must grant relief if we are in 'grave doubt' as to whether a jury would
13 have found the relevant aggravating factors beyond a reasonable doubt."  Butler, 528 F.3d at 648
14 (citing O'Neal, 513 U.S. at 436).  "Grave doubt exists when, 'in the judge's mind, the matter is so
15 evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error.'"
16 Butler, 528 F.3d at 648 (citing O'Neal, 513 U.S. at 435.).

17     "[T]he relevant question is not what the trial court *would* have done, but what it legally *could*
18 have done."  Butler, 528 F.3d at 648-649 (emphasis in original).  It is clear that under California law
19 only one aggravating factor need to be proven for imposition of the upper aggravated term where the
20 aggravating factor outweighs the cumulative effect of all mitigating factors.  People v. Nevill, 167
21 Cal.App.3d 198, 202 (1985); *see also* People v. Black, 41 Cal.4th 799, 806 (2007), Butler, 528 F.3d
22 at 642-643.  Aggravation means that when compared to other ways in which such a crime could be
23 committed, the manner in which the defendant committed the crime was distinctively worse than the
24 ordinary.  People v. Webber, 228 Cal.App.3d 1146, 1169 (1991).  In light of the evidence presented
25 at trial, there does not exist a grave doubt that a jury would have found that Petitioner's crimes
26 involved great violence disclosing a high degree of cruelty, viciousness, or callousness.  *See* Cal. R.
27 Court, Rule 4.421(a)(1).  The victim testified that the assailant attacked him with a knife, cutting his
28 finger and slashing his wrist before stabbing him numerous times (at least twice in the stomach and

in his upper chest area). (RT at 78-79). Furthermore, the victim also testified that the attack occurred while another assailant held him down. (RT at 79). Petitioner did not present any contradictory evidence as to how the victim was attacked by his assailant. As the jury found Petitioner guilty of the crime of robbery, the jury obviously believed the victim's testimony regarding the attack, including the degree of harm inflicted on the victim. There exists very little doubt in the Court's mind that the jury would have found against Petitioner on this aggravating factor–namely that the robbery was committed with great violence displaying a high degree of cruelty more than in the ordinary robbery as the victim was stabbed numerous times during the robbery. Thus, the trial court's imposition of the upper term was harmless error as a jury would have found this aggravating factor beyond a reasonable doubt. *See* United States v. Zepeda-Martinez, 470 F.3d 909, 913 (9th Cir. 2006) (holding that trial court's imposition of enhanced term harmless because trial court relied on a fact supported by "overwhelming and uncontroverted evidence"); Fennen v. Nakayema, 494 F.Supp.2d 1148, 1156 (E.D. Cal. 2007) (holding that trial court's imposition of upper term harmless because trial court relied on a fact which was undisputed at trial and "the same result would have obtained had a jury been asked to find this fact").

### 3. Imposition of Consecutive Sentence

Petitioner challenges the imposition of a one year consecutive sentence for assault with a deadly weapon, arguing that it stems from factual determinations made by the trial court rather than the jury. Petitioner presented this claim to the Court of Appeal, which rejected the claim based on the California Supreme Court's decision in *Black*. As noted by the Supreme Court recently in *Oregon v. Ice*, 129 S.Ct. 711, 718-719 (2009), the imposition of a consecutive sentence does not implicate the Sixth Amendment, as construed by the Supreme Court in *Blakeley* or *Apprendi*. Consequently, Petitioner cannot obtain habeas corpus relief on this ground as the imposition of consecutive sentences based on factors found by a judge does not violate Petitioner's Sixth Amendment right to a jury trial.

### V. Certificate of Appealability

A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. Miller-

El v. Cockrell, 123 S.Ct. 1029, 1039 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
>
> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253.

If a court denies a petitioner's petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 123 S.Ct. at 1034; Slack v. McDaniel, 529 U.S. 473, 484 (2000). While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." Miller-El, 123 S.Ct. at 1040.

In the present case, the Court finds that reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further. Petitioner has not made the required substantial showing of the denial of a constitutional right. Accordingly, the Court hereby DECLINES to issue a certificate of appealability.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. The Petition for Writ of Habeas Corpus is DENIED with prejudice;

2. The Clerk of Court is DIRECTED to enter judgment; and

3. The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

**Dated:   February 13, 2009**          **/s/ John M. Dixon**
                                        UNITED STATES MAGISTRATE JUDGE